FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 JUN 11 PM 2:52

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| KAMALA D. STREATER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | |
| JIM WOODWARD, et al., | ) | 96-C-1364-S |
| | ) | |
| Defendants. | ) | |

**ENTERED**

**JUN 11 1998**

**MEMORANDUM OF OPINION DENYING RECONSIDERATION OF RECUSAL ISSUE AND REQUIRING DEFENDANTS' COUNSEL TO SHOW CAUSE**

This court's caseload is among the five heaviest in the nation. Its judges have precious little time to waste on groundless motions. In the court's view, counsel for the defendants in this case filed a groundless and untimely recusal motion, and persisted in pursuing it. For that reason, a show cause order is appropriate under Rule 11 of the Federal Rules of Civil Procedure.

I

This sexual harassment and sexually hostile environment case under 42 U.S.C. § 2000e *et seq*. ("Title VII") and 42 U.S.C. § 1983 was filed in May 1996 against former Jefferson County Sheriff Mel Bailey and incumbent Sheriff Jim Woodward, based on alleged conduct of one or more deputy sheriffs. If the original Scheduling Order had been adhered to, the case would have been tried by now. Discovery ended last July 31. The parties jointly moved to

45

continue the pretrial setting of August 1997. The Sheriff changed lawyers in January 1998. The case was pretried in February 1998. A trial date was set for April 27, 1998. Accommodating the Sheriff's April 21 request, the court continued the trial until its next trial docket.

On May 1, Mark T. Waggoner, counsel for the defendants, filed a motion seeking to disqualify me, based on longstanding occupational tax litigation to which I am a party.[1]

In my judgment, a reasonable person, particularly a lawyer, knowing the relevant facts and issues in *Jefferson County v. Clemon*, 93-M-00196-S,[2] (N.D. Ala. 1993), and the relationship

---

[1] The motion recites:

1. A lawsuit is pending between this Judge and Jefferson County involving the question of whether this Judge is exempt from the county's occupational tax.

2. This court has recused itself from any cases involving Jefferson County. Jefferson County appropriates all funds for the operation of the Jefferson County Sheriff's Department, a defendant in this matter through Sheriff Jim Woodward in his official capacity as Sheriff. Any judgment entered in this cause would be paid from Jefferson County. These funds are, in large part, financed by the County's occupational tax.

Motion For Recusal, p. 1. In the accompanying affidavit, Commissioner President Mary M. Buckelew attests that although the Commission provides funds to the Sheriff, "[t]he Sheriff controls the operation of the Jefferson County Sheriff's Department and **applies the funds allocated to his department as he sees fit**." Exhibit 1, Motion For Recusal (emphasis added).

[2] On February 25, 1993, this action was consolidated with *Jefferson County v. Acker*, CV-93-M-00069-S (N.D. Ala. 1993).

2

between the defendant Sheriff and Jefferson County, would not question my impartiality towards all of the parties in this action.

II

In 1980, I was confirmed as a United States District Judge for the Northern District of Alabama, which includes Jefferson County, Alabama. Eight years after I assumed office, the Jefferson County Commission enacted an "occupational tax" which on its face makes it unlawful for federal judges to perform their duties without having paid the tax, and on its face nullifies any and all of their actions performed in the absence of payment. A substantial majority, if not all, of the judges of this court consider the tax to be unconstitutional. When Judge William Acker and I refused to pay it, we were sued by Jefferson County. The ongoing dispute has been well documented in the federal reporters and the media. See *Jefferson County v. Acker*, 137 F.3d 1314 (11th Cir. 1998); 117 S. Ct. 2429 (1997); 92 F.3d 1561 (11th Cir. 1996); 61 F.3d 848 (11th Cir. 1995); 850 F. Supp. 1536 (N.D. Ala. 1994). It is my information and belief that all of the active judges of the Northern District of Alabama now either refuse to pay the tax altogether or pay it under protest. All except one active judge have appeared *amica curiae* in my behalf.

Because of my status as a party in the occupational tax litigation, both Judge Acker and I have consistently disqualified

ourselves in all cases where Jefferson County ("the County") or the Jefferson County Commission ("the Commission") is a party, in order to avoid even the appearance of impartiality.[3]

I have not recused myself, and until May 1, 1998, no judge of this court has ever been requested to recuse himself or herself from a case on the ground that the County provides funding for a litigant. By way of example, I am the presiding judge in *Agee v. Jefferson County Personnel Board*, CV-93-C-0397-S (N.D. Ala. filed Feb. 26, 1993), where Mr. Waggoner was counsel of record for the Jefferson County Personnel Board until he changed law firms.[4]

### III

Operations of the Jefferson County Sheriff's Department are funded by the County Commission.[5] But the sheriff is actually an Alabama constitutional officer and thus, in many significant respects, a representative of the State rather than the County. *See* Ala. Const. of 1901, art. V, § 112; *McMillian v. Monroe County*,

---

[3] "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

[4] Mr. Waggoner previously worked for Gorham & Waldrep, P.C., but is currently at Hand Arendall, L.L.C.

[5] I judicially notice the "Official Operating Budget 1997-98 Jefferson County, Alabama." In addition to the Sheriff's operations, the County Commission funds the Board of Registrars, Youth Detention, state courts, Probate Court, Cooper Green Hospital, the County Home, the Personnel Board, and several other functions. To my knowledge, no judge of this court has disqualified himself/herself from cases involving these agencies because of the dispute with the County over the occupational tax.

117 S. Ct. 1734, 1737-40 (1997). A tort claim against an Alabama sheriff is viewed not as a suit against the county in which he sits, but as a suit against the State of Alabama. Thus, the county is not vicariously liable for the acts of the sheriff. See *Parker v. Amerson*, 519 So. 2d 442, 444 (Ala. 1987); *Monteil v. Holcomb*, 199 So. 2d 245 (Ala. 1940). Counties have no direct control over the manner in which sheriffs carry out their law enforcement duties. The fact that the county commission provides funding for the sheriff's department "does not translate into control over him, since the county neither has the authority to change his salary nor the discretion to refuse payment completely." *McMillian*, 117 S. Ct at 1740.

        Defendant Sheriff Woodward's testimony cuts to the chase:

> The voters of Jefferson County is [sic] my boss. I'm an elected official just like the County Commissioners are. The only thing the County Commission does for me is control purse strings on my budgets, that's all. I don't answer to anybody on the County Commission for anything. I am an appointing authority within the sheriff's department myself.

Deposition of Jim Woodward, pp. 23-24.

IV

        Having satisfied myself shortly after the case was filed that there is no § 455(a) problem in my sitting as the judge, it

was apparent to me that the disqualification motion was groundless when it was filed last month. Rather than set down the matter for hearing, I simply stamped the motion "DENIED" and penned in the words, "untimely, <u>inter alia</u>."

Mr. Waggoner has now filed a motion to reconsider the denial of the recusal motion, urging that "[t]here is no timeliness requirement for filing a Motion seeking recusal under 28 U.S.C. § 455(a)." He cites two cases for that proposition: *United States v. Kelly*, 888 F.2d 732, 746-47 (11th Cir. 1989), and *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1115 (5th Cir. 1980), *cert. denied*, 449 U.S. 820 (1980).

Contrary to Mr. Waggoner's representation to the court, the law of our circuit is that the timeliness requirement applies to § 455(a) motions. In *United States v. Slay*, 714 F. 2d 1093, 1094 (11th Cir. 1983), *cert. denied*, 464 U.S. 1050 (1984), the circuit squarely held that: **"a motion to disqualify a magistrate under § 455(a) must be timely.**" (emphasis added). As in this case, "Slay's counsel was aware prior to the hearing on the motion to suppress of facts which he now contends support a § 455(a) motion." *Id*. The court concluded that "Slay's disqualification argument is therefore untimely and need not be considered by this court on appeal." *Id*.

In *Kelly*, the judge himself raised the recusal issue when it became clear during the nonjury trial that the wife of the defendant's principal witness and the judge's wife were close personal friends. The judge nonetheless continued to sit on the case after the defendant refused to consent to a mistrial. On appeal the defendant raised the disqualification issue. Rejecting the Government's argument that the defendant had waived his right to raise the disqualification issue by failing to object to the judge's proceeding in the case, the circuit opined:

> We also disagree with the government's contention that Kelly's section 455(a) claim is barred for untimeliness. We noted in *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1115 (5th Cir.), *cert. denied*, 449 U.S.820, 101 S. Ct. 78, 66 L.Ed.2d 22 (1980), that section 455 `imposes...no duty on the parties to seek disqualification, nor any time limits within which disqualification must be sought.' **We have held, however, that a recusal issue may not be abused as an element of trial strategy.** *Cf id.*, [FN25] *accord Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th cir. 1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1983, 95 L.Ed.2d 500 (1987)(**party may not lie in wait, knowing facts supporting a section 455(a) claim, and raise issue only after court's ruling on the merits**); *United States v. Slay*, 714 F.2d 1093, 1094 (11th Cir. 1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984)(**untimely section 455(a) claim need not be considered on appeal**).

>   FN 25.  *Potashnick* avoided deciding the timeliness issue presented in that case.  *See* 609 F.2d at 1115.

*Kelly*, 888 F.2d at 746 (emphasis added).

*Potashnick* stands for the unremarkable proposition that a party is not even required to file a 455(a) motion, for the judge has a clear duty to recuse himself, on his own inquiry and motion, where his impartiality might reasonably be questioned.  And although the statute does not on its face impose on the parties a time limit for seeking disqualification, where a party elects to file a 455(a) motion, he must do so within a reasonable time after learning the facts which require disqualification.

In declaring that the timeliness requirement does not apply to § 455(a) motions, Mr. Waggoner apparently conflates two separate and independent requirements.  First, there is an unflagging § 455(a) duty of a judge to disqualify himself **whenever**, at whatever stage of the litigation, it appears that his impartiality might reasonably be questioned.  If the judge actually knows of facts requiring recusal, the law contemplates that he will "fully accept the obligation to disqualify himself" and do so forthwith **on his own motion**.  *Potashnick, id.; See also U.S. v. Cerceda*, 139 F.3d 847, 852-53 (11th Cir. 1998).  If the judge fails

to disqualify himself under those circumstances, then the issue may be raised by a party on appeal despite it not having been raised by motion in the lower court.

Independent of the judge's obligation is the requirement imposed on a party with knowledge of disqualification facts who elects to file a § 455(a) motion. The law is clear that under those circumstances, the party must file the motion at the first available opportunity. Put another way, the motion must be filed in a timely fashion. Otherwise, the issue is waived. A party may not lie in wait and raise the disqualification issue at whim. *See, Phillips v. Amoco, supra.*

As the Eleventh Circuit reminded the bench and bar just last month:

> [A] motion to disqualify must be timely. . . . [A party] waive[s] the issue by not raising it at the first available opportunity. . . .The recusal provision was intended to be a shield, not a sword. An issue involving recusal cannot be used as an insurance policy to be cashed in if a party's assessment of his litigation risks turns out to be off and a loss occurs."

*Bivens Gardens Office Bldg., Inc. v. Barrett Bank of Florida*, 140 F.3d 898, 913 (11th Cir. 1998).

V

It appears to the court that the recusal motion may have been filed in violation of Fed. R. Civ. P. 11(b)(1) &(2)'s ban against the filing of motions for an improper purpose, and its requirement that legal contentions be warranted by existing law.[6] This query is heightened in intensity by the request for reconsideration. If Mr. Waggoner had reasonably analyzed the cases he cites, it would appear that he would not have filed the disqualification motion in the first place, and that he certainly would not have persisted in it. Mr. Waggoner should be held to explain his motivation and his apparent failure to conduct a legal inquiry reasonable under the circumstances.

---

[6] Rule 11 provides as follows:

> (b) Representations to the court. By presenting to the court . . . a pleading . . ., an attorney . . . is certifying that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

By appropriate order, the Motion to Reconsider the order denying recusal will be denied, and a show cause order will issue.

DONE this 11th day of June, 1998.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON